## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| MERIDIAN SECURITY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:21-cv-353-JDK |
| CURTIS MURPHY, | § § § | |
| Defendant. | § | |

## OPINION AND ORDER

This is an insurance dispute.  Plaintiff Meridian Security Insurance Company seeks a declaratory judgment that it is not liable for damage arising out of a fire at Defendant Curtis Murphy's property.  Murphy asserts several counterclaims because of Meridian's refusal to pay.  Docket No. 4.  Meridian now moves for summary judgment in its favor on its declaratory judgment claim and against Murphy on his counterclaims.  Docket No. 18.

As explained below, fact issues preclude summary judgment on Meridian's declaratory judgment claim, Murphy's breach of contract counterclaim, and Murphy's Chapter 542 counterclaim.  However, because Murphy failed to present any evidence to support his counterclaims for breaching the duty of good faith and fair dealing and violating Chapter 542, the Court will enter summary judgment dismissing those counterclaims.

**I.**

Meridian issued Homeowners Policy No. 1000677728 (the "Policy") listing Curtis Murphy as the named insured. Docket No. 18, Ex. 2 at 3. The Policy covered the "dwelling on the 'residence premises' shown in the Declarations." *Id.* at 52. The Policy defined "residence premises" as "[t]he one-family dwelling where you reside . . . on the inception date of the policy period shown in the Declarations and which is shown as the 'residence premises' in the Declarations." *Id.* at 85. The Declarations in turn identified the "residence premises" as the dwelling and structures at 401 Davis St., Longview, Texas, 75602 (the "Property"). *Id.* at 3. The policy period was November 26, 2019, to November 26, 2020. *Id.*

On January 23, 2020, a fire severely damaged the Property, resulting in a total loss. Docket No. 18, Ex. 11. The Longview Fire Marshal listed the cause of the fire as "undetermined." Docket No. 19 at 3.

Murphy reported the claim four days after the fire. Docket No. 18, Ex. 3 at 32. Following an investigation, Meridian denied the claim in March 2021 on three grounds. Docket No. 18, Ex. 29. First, Meridian contended that Murphy did not "reside" at the Property on the Policy's inception date. *Id.* at 4. Second, Meridian claimed that Murphy failed to properly substantiate his interest in the Property at the time of the fire. *Id.* Third, Meridian asserted that Murphy failed to adequately cooperate with its investigation, which "has been prejudicial to Meridian." *Id.* at 5.

Meridian then filed this declaratory judgment action. Docket No. 1 at 1. Murphy counterclaimed, alleging that Meridian beached the insurance contract, breached its duty of good faith and fair dealing, and failed to comply with the Texas

Insurance Code governing unfair settlement practices and prompt payment of claims. Docket No.  4 at 9–12.

At the conclusion of discovery, Meridian moved for summary judgment on its declaratory judgment claim and all counterclaims.  Docket No. 18.

## II.

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A fact is material only if it will affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine only if the evidence could lead a reasonable jury to find for the nonmoving party.  *See id.*  In determining whether a genuine issue of material fact exists, the Court views all inferences drawn from the factual record in the light most favorable to the nonmoving party, here Murphy.  *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

After the moving party has made an initial showing that there is no evidence to support the nonmoving party's claim, the nonmoving party must assert competent summary judgment evidence to create a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*,

19 F.3d 1527, 1533 (5th Cir. 1994).  The nonmoving party must identify evidence in the record and articulate how that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322–23.

## III.

Meridian seeks summary judgment on its declaratory judgment claim and Murphy's breach of contract claim on three grounds.  The Court addresses each ground in turn below.

## A.

Meridian first argues that it is not liable under the Policy because the evidence conclusively establishes that Murphy did not reside at the Property on November 26, 2019, the Policy's inception date.  Docket No. 18 at 20.  For his part, Murphy does not dispute that the Policy required him to reside at the Property on November 26, but cites evidence he *did* reside there on that date.  Docket No. 20 at 3.  Murphy thus argues that a material fact dispute precludes summary judgment on this basis.  *Id.* at 10.  The Court agrees.

To be sure, Meridian cites substantial evidence that Murphy was not residing at the Property on November 26—*e.g.*:  (1) Murphy told the deputy fire marshal  in January 2020 that he lived in Mississippi and would relocate to Texas later, Docket No. 19 at 53; (2) Murphy stated in an examination under oath (EUO) that he did not stay overnight at the Property until it had electricity, Docket No. 20, Ex. 3 at 32:6–24, which occurred in December 2019, Docket No. 18, Ex. 18 at 11; and (3) Murphy's

"errata" following the EUO confirmed that he did not move anything into the Property or stay there overnight until December 2019, Docket No. 18, Ex. 24 at 5:5–12.

But there is also evidence going the other way.  For example, Murphy represented to Meridian in applying for coverage that the Property was his "primary home and [he] live[d] there full time" as early as September 2019.  Docket No. 20, Ex. 7 at 294:2–7.[1]  He also stated in his EUO that he moved a bedroom set to the Property in October 2019, Docket No. 20, Ex. 3 at 32:2–5; moved various personal items and furniture in November, *id.* at 45:5–9; and was traveling for work but slept at the Property "every other weekend" in November, *id.* at 45:12.  Murphy then confirmed in his deposition that he moved furniture, clothing, and other items to the Property "[f]rom a period of October to December" and that "I lived there in October. I lived there in November.  I lived there in December."  Docket No. 20, Ex. 7 at 143:14–16.[2]  Murphy also testified that in November, he supervised floor repairs in the home and that, although his visits may have been periodic, he is a truck driver who spends weekdays hauling cargo out of state.  *Id.* at 79:8–12, 80:5; Docket No. 20, Ex. 3 at 28:16–19 ("I'm a truck driver, so basically I'm gone all the time.").

These discrepancies create material fact issues for a jury to decide.  *See, e.g.*, *Celotex Corp.*, 477 U.S. 323;  *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 292

---

[1]  In his deposition, Murphy testified that this statement in his application may have been a "mistake." Docket No. 20, Ex. 8 at 294:8.

[2]  Meridian objects to Murphy's deposition testimony (Docket No. 20, Ex. 7) on the ground that Murphy submitted the entire transcript while citing only a few pages and lines of testimony.  Docket No. 21 at 2.  While "Rule 56 does not impose upon a district court a duty to sift through the record," *Ragas*, 136 F.3d at 458, Murphy has sufficiently cited to specific provisions in support of its argument.  This objection is overruled.

(5th Cir. 2020).  Summary judgment on this ground is thus improper.  *Lester*, 805 F. App'x at 292–92.[3]

## B.

Meridian next argues that it owes no liability because "Murphy's interest in the dwelling and personal property has not been substantiated."  Docket No. 18 at 23. Meridian complains that Murphy has presented only "a quitclaim deed" to the Property, and that this does not "of itself establish any title in those holding under it."  *Id.* at 24.  Meridian also contends that Murphy has presented no evidence to show ownership of personal property destroyed in the fire.  But, as Murphy says, the quitclaim deed conveyed title because the grantor of the quitclaim deed possessed title.  And Murphy has presented some evidence of personal property ownership.

Under Texas law, an insured party must have an insurable interest in the property to recover.  *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 794 (Tex. App.— Dallas 1993, no writ).  Further, the Policy here limits Meridian's liability to "the amount of such 'insured's' interest at the time of loss."  Docket No. 18, Ex. 2 at 62.  "A claimant has the burden to prove an insurable interest . . . ."  *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 660 (Tex. App.—Texarkana 2013, no pet.).

---

[3]  Meridian cites two cases that are factually distinguishable.  Docket No. 18 at 21–22.  In *GeoVera Specialty Insurance Company v. Joachin*, the insureds "intended" to make the insured property their primary residence, but they delayed moving in until they fixed termite damage and replaced sheetrock and "repeatedly admitted that they never 'resided' at the [insured] property."  964 F.3d 390, 393 (5th Cir. 2020).  In *American Risk Insurance Company v. Serpikova*, the insured moved out of the home and leased it before the relevant period, and the court further found that "[the insured] never resided on the Property during the term of the Policy nor did she intend to reside" there.  *Id.* at 504.

To prove an insurable interest in the home on the Property, Murphy relies on his quitclaim deed, which he recorded with the Gregg County Clerk on October 24, 2019.  Docket No. 18, Ex. 18 at 5–7.  Although a quitclaim deed alone does not establish title, Meridian does not dispute that a quitclaim deed can under some circumstances demonstrate title in the holder—where "title in the grantor [is] shown."  Docket No. 18 at 24; *Abraham v. Crow*, 382 S.W.2d 756, 758 (Tex. Civ. App.— Amarillo 1964, no writ).  And, here, Murphy demonstrated title in the grantor. Murphy submitted the Gregg County Appraisal District's deed history for the Property, which shows that (1) Murphy received a quitclaim deed from a real estate company, "Investments and Real Estate LLC," which in turn (2) received a quitclaim deed from Michael McElroy, who (3) earlier received a warranty deed from Navy Federal Credit Union.  Docket No. 20, Ex. 5 at 4.[4]  Because a warranty deed conveys title, McElroy conveyed title to the real estate company, which in turn conveyed title to Murphy.  *Enerlex, Inc. v. Amerada Hess, Inc.*, 302 S.W.3d 351, 354 (Tex. App.— Eastland 2009, no pet.) ("A quitclaim deed conveys the grantor's right in that

---

[4] Meridian objects to the deed history as unauthenticated hearsay.  Docket No. 21 at 1–2.  The document is self-authenticating, however, because it was issued by the Gregg County Appraisal District, a government agency.  Docket No. 21 at 1–2; TEX. TAX CODE § 6.01(c) ("An appraisal district is a political subdivision of the state.").  Under Federal Rule of Evidence 902(5), "[a] book, pamphlet, or other publication purporting to be issued by a public authority" is self-authenticating.  *See also Rychorcewicz v. Welltec, Inc.*, 2018 WL 3559131, at *7 (S.D. Tex. June 22, 2018) ("It is well-settled that information found on government websites is self-authenticating under this rule."); *Nat'l Urban League, Inc. v. Urban League of Greater Dall. & N. Cent. Tex., Inc.*, 2017 WL 4351301, at *6 (N.D. Tex. Sept. 29, 2017) ("Printouts from government web sites are self-authenticating under Federal Rule of Evidence 902(5).").  The deed history is not hearsay, moreover, because it is a record setting out "a matter observed while under a legal duty to report . . . ." FED. R. EVID. 803(8).  Indeed, courts routinely admit information from county appraisal districts under Rule 803(8).  *Hearn v. Deutsche Bank Nat. Tr. Co.*, 2013 WL 6079460, at *4 (N.D. Tex. Nov. 18, 2013) (collecting cases) ("Although Hearn objects to the appraisal printout as hearsay, it is actually a public record under Rule 803(8) because it represents the findings of a governmental process to collect information about real property."); *Kew v. Bank of Am., N.A.*, 2012 WL 1414978, at *3 n.4 (S.D. Tex. Apr. 23, 2012).

property, if any." (citing *Geodyne Energy Income Prod. P'ship I–E*, 161 S.W.3d at 486 n.12 (Tex. 2005)).  By submitting evidence that he holds title, Murphy has at a minimum created a genuine issue of material fact regarding his insurable interest in the dwelling on the Property.  *See, e.g.*, *S. Vanguard Ins. Co. v. Silberstein*, 2010 WL 2998786, at *5 (Tex. App.—Houston [14th Dist.] Aug. 3, 2010, no pet.) (holding that sole title holder had an insurable interest).[5]

Murphy has also presented some evidence of an interest in the personal property destroyed in the fire.  Murphy's sworn proof of loss, for example, identifies twenty-one items lost in the fire and their estimated values.  Docket No. 18, Ex. 11 at 2.  He further directs the Court to his EUO, in which he discussed several items in the home and provided their estimated values.  Docket No. 20, Ex. 3 at 185:5–205:25.  In his deposition, moreover, Murphy discussed the clothes that he had brought to the Property that were lost.  Docket No. 20, Ex. 7 at 37:9–24.  Conflicting evidence on insurable interests may raise questions of fact precluding summary judgment. *Valdez*, 994 S.W.2d at 916 (vacating entry of summary judgment because of a question of fact about insurable interest).

---

[5] The parties do not dispute that proof of title is sufficient to establish an insurable interest.  And because the Court finds evidence of title here, it need not address whether a quitclaim deed alone constitutes an insurable interest.  *See Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex. 1963) ("[A]n insurable interest exists when the assured derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction."); *see also, e.g.*, *Dean v. Lowery*, 952 S.W.2d 637, 640 (Tex. App.—Beaumont 1997, pet. denied) (describing the premise that title is not required for an insurable interest as "well settled"). *See also, e.g.*, *Tatum v. Allstate Indem. Co.*, 2011 IL App (1st) 103026-U, ¶ 39 ("By contrast, the quitclaim deed at issue in this case was fully executed and would provide the basis for any insurable interest that plaintiff might hold, whether it would be that of an owner or that of a mortgagee.").

Accordingly, the Court denies Meridian's motion for summary judgment on this ground.

## C.

Lastly, Meridian argues that it owes no liability because Murphy failed as a matter of law to cooperate with the subsequent investigation.  Under the Policy Meridian need not cover a loss if Murphy (1) fails to abide by prescribed duties after loss and (2) the failure to comply is prejudicial to Meridian.  Docket No. 18, Ex. 2 at 63.  And the Policy imposes on Murphy a duty to "[c]ooperate with [Meridian] in the investigation of a claim."  *Id.*

"It is well established under Texas law that an insured's breach of a cooperation provision relieves an insurer of liability on the policy."  *See Phila. Indem. Ins. Co. v. Stebbins Five Cos.*, 2002 WL 31875596, at *5 (N.D. Tex. Dec. 20, 2002). But "[a]n insured's failure to cooperate will not operate to discharge the insurer's obligations under the policy unless the insurer is actually prejudiced."  *Martinez v. ACCC Ins. Co.*, 343 S.W.3d 924, 930 (Tex. App.—Dallas 2011, no pet.).  Whether an insured materially breached a cooperation clause and whether there was resulting prejudice to the insurer are generally questions of fact.  *See Duzich v. Marine Off. of Am. Corp.*, 980 S.W.2d 857, 866 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied).  A court may decide prejudice as a matter of law only if undisputed facts sufficiently establish prejudice.  *St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003) ("[I]f the undisputed facts establish prejudice sufficient to relieve an insurer of its obligations to defend or indemnify an insured, the court may decide the issue on summary judgment.").

Meridian contends that Murphy breached the duty to cooperate by failing to provide requested financial records and certain communications with relevant parties. Docket No. 18 at 26–27. Meridian also argues that Murphy failed to comply with requests for information about witnesses, including Carol Aldridge, Mo Li, Jamia Murphy, Keyah Williams, and Michael McElroy. *Id.* at 26. But Murphy presents evidence that he (1) submitted three sworn statements to Meridian during the investigation, Docket No. 20, Exs. 2; 3; 7 (recorded call, EUO, and deposition, respectively); (2) timely provided a sworn proof of loss as requested by Meridian, Docket No. 18, Ex. 11; (3) responded to various requests by Meridian with copies of the quitclaim deed, electric bills, his Commercial Driver's License, work logs, bank statements, federal income tax returns, cell phone records, and tax statements for the Property, Docket No. 18, Exs. 19; 22 (letters from Meridian confirming receipt of the documents); and (4) provided the last known areas of residence for three of the five individuals mentioned above, Docket No. 20, Ex. 3 at 21:9–16; 184:18–20; 137:4– 25. The record also includes routine correspondence among Meridian and Murphy and his counsel, including standard objections to some of the requests submitted by Meridian. Docket No. 18, Exs. 16–25. While Murphy's responses were sometimes lacking, Docket No. 18, Ex. 20 (explaining Murphy's inability to provide some requested documents), the Court cannot conclude as a matter of law that Murphy breached his duty to cooperate. *See, e.g.*, *Vollandt v. Axis Ins. Co.*, 2022 WL 822020, at *9 (E.D. Tex. Mar. 17, 2022) (holding that material issues of fact precluded summary judgment for a breach of a cooperation clause claim).

Nor has Meridian demonstrated that any breach was prejudicial as a matter of law.  Although Meridian complains about the timeliness of some responses, the company does not argue that "'having these documents in a more timely fashion would have protected it from fraud' or that the 'information in the documents is less accurate for being less fresh.'"  *Id.* at \*7 (quoting *Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, 2012 WL 290027, at \*6 (S.D. Tex. Jan. 31, 2012)).  Meridian suggests that Murphy's delays and incomplete responses prevented it from interviewing two witnesses, Carol Aldridge and Keyah Williams.  But Meridian fails to explain how the inability to contact these witnesses prejudiced its investigation.  Aldridge was apparently a friend of Murphy's who merely helped him move a stove into the Property.  Docket No. 20, Ex. 3 at 46:11–47:8.  Murphy submitted a sworn statement and phone number from Williams, who allegedly acted as a real estate agent in Murphy's purchase of the Property.  Docket No. 18, Ex. 24 at 8.  And even if Murphy had provided the requested contact information sooner, there is no indication that Meridian would have been successful in locating them.  *Vollandt*, 2022 WL 822020 at \*9.

Summary judgment on this final ground is therefore improper.

\*     \*     \*     \*

In sum, Meridian is not entitled to summary judgment on any ground, and thus the Court **DENIES** Meridian's motion for summary judgment on its declaratory judgment claim and on Murphy's breach of contract counterclaim.

**IV.**

Meridian also moves for summary judgment on Murphy's remaining counterclaims under Texas common law and Texas Insurance Code Chapters 541 and 542.  The Court addresses these claims below.

**A.**

Murphy alleges that Meridian breached the duty of good faith and fair dealing and violated § 541.060 of the Texas Insurance Code in denying his insurance claim. Docket No. 4 at ¶¶ 57–61, 66–67.

"To succeed on a claim of breach of the duty of good faith and fair dealing, the insured must prove (1) that the insurer either denied or delayed payment of the claim and (2) that the insurer knew or should have known that it was reasonably clear that the claim was covered."  *Kondos v. Allstate Tex. Lloyds*, 2005 WL 1004720, at *11 (E.D. Tex. Apr. 25, 2005) (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997)).  If the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith.  *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 600 (Tex. 1993)).

Similarly, to establish his claim under § 541.060, Murphy must prove that Meridian misrepresented material facts relating to coverage, failed to promptly provide a reasonable explanation of the basis of denial, failed within a reasonable time to affirm or deny coverage, and refused to pay Murphy's claim without conducting a reasonable investigation.  Docket No. 4 at ¶¶ 42–45; TEX. INS. CODE

12

§ 541.060(a)(1)–(4), (7).   Murphy further contends that Meridian violated these provisions "knowingly."   Docket No. 4 at 12.   Treble damages are available for Chapter 541 violations "on a finding by the trier of fact that the defendant knowingly committed the act complained of . . . ."  TEX. INS. CODE § 541.152; *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018).

Here, Meridian argues there is no evidence to support these claims.  Rather, Meridian asserts the evidence shows that it "reasonably investigated Murphy's claim" and explained its reasoning to Murphy, and that, "at a minimum, a bona fide dispute existed" regarding coverage.  Docket No. 18 at 29.  The Court agrees.

Meridian began its investigation just six days after the fire, which proceeded in a timely manner until denial of Murphy's claim on March 23, 2021.  Docket No. 18, Exs. 8; 29.  Meridian provided a full and timely explanation to Murphy regarding its denial.  Docket No. 18, Ex. 29.  And, as noted above, the investigation supported a reasonable basis for denying coverage.  There was substantial evidence that Murphy did not reside at the Property on the Policy's inception date.  Although some evidence suggests otherwise (and precludes summary judgment on Meridian's affirmative claim), Meridian's denial of coverage on this basis was not bad faith.  *See Higginbotham*, 103 F.3d at 460 (holding that insurer did not act in bad faith where there was a reasonable basis to deny coverage).  Murphy, moreover, was unable to produce a contract, receipt, or other documentation from the purchase of the Property apart from a quitclaim deed, raising questions about the Property's ownership and

13

providing an additional reasonable basis to deny coverage.  Docket No. 18, Ex. 20 at 2, Ex. 17.

Murphy presents no evidence of bad faith or unfair dealing, arguing only that "Meridian's liability to pay the full claim in accordance with the terms of the Policy was reasonably clear." Docket No. 4 at 9.  That is insufficient to overcome Meridian's motion for summary judgment on these claims.  *Kondos*, 2005 WL 1004720, at *12 (granting summary judgment where "plaintiffs have failed to adduce competent summary judgment evidence from which it could be inferred that [the insurer] acted in bad faith in adjusting their claim").

Accordingly, Meridian's motion for summary judgment on Murphy's claims for breach of the duty of good faith and fair dealing and violating Chapter 541 is **GRANTED**.

## B.

Murphy also seeks relief against Meridian under Chapter 542 of the Texas Insurance Code.  Known as Texas's "prompt payment statute," Chapter 542 requires an insurer found liable for an insurance claim to pay interest on the claim, as well as attorney's fees, if payment is delayed beyond sixty days.  TEX. INS. CODE §§ 542.058, 542.060; *see also Weister-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015).  Meridian seeks summary judgment on this claim solely on the ground that it is not liable under the Policy as a matter of law.  Docket No. 18 at 29–30.  But, as explained above, material fact issues preclude such a finding.  Murphy has presented evidence that he resided at the Property on the inception date, has a valid and substantiated interest in the Property, and cooperated in the claim

14

investigation.  Meridian's motion for summary judgment on Murphy's Chapter 542 claim is therefore **DENIED**.

## V.

For the reasons stated above, the Court **DENIES** Meridian's motion for summary judgment (Docket No. 18) on its declaratory judgment claim, Murphy's breach of contract counterclaim, and Murphy's Chapter 542 counterclaim.  The Court **GRANTS** Meridian's motion for summary judgment on Murphy's breach of the duty of good faith and fair dealing counterclaim and his Chapter 541 counterclaim, both of which are hereby **DISMISSED WITH PREJUDICE**.

So **ORDERED** and **SIGNED** this **12th** day of **October, 2022.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

15